UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| SILVERIO GONZALEZ MENDIOLA,<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | No. 5:26-cv-06965-JDE<br><br>ORDER DENYING PETITION |

**I.**

**INTRODUCTION**

On November 12, 2026, the Court received from Silverio Gonzalez Mendiola ("Petitioner"), proceeding pro se, a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his detention by immigration authorities. Dkt. 1 ("Petition" or "Pet."). Petitioner also filed a written Consent to Magistrate Judge, consenting to proceed before a Magistrate Judge. Dkt. 2. Counsel for Respondents have issued a standing consent to proceed before a Magistrate Judge in cases such as this, subject to an ability to withdraw such general consent. Dkt. 5 at 9 (CM/ECF pagination). Petitioner also filed a Request to Proceed In Forma Pauperis. Dkt. 3 ("IFP Request").

This is Petitioner's fourth habeas petition challenging his immigration detention. See Gonzalez-Mendiola v. DHS/ICE, Case No. 5:25-cv-03631-SVW-JDE (C.D. Cal.) ("First Action"); Gonzalez Mendiola v. Adelanto ICE Processing Center Warden, et al., Case No. 5:26-cv-02089-SVW-JDE (C.D. Cal.) ("Second Action"); Gonzalez Mendiola v. F. Semaia, et al., Case No. 5:26-cv-05059-SVW-JDE (C.D. Cal.) ("Third Action"). The First Action challenged his ongoing detention under Zadvydas v. Davis, 533 U.S. 678 (2001) and was dismissed without prejudice. The Second Action challenged his initial arrest and "prolong[ed]" detention without a timely and meaningful opportunity to demonstrate detention was not warranted. Consistent with the District Court's order on Petitioner's Ex Parte Motion for Emergency Temporary Restraining Order in the Second Action, Petitioner received an individualized bond hearing before an immigration judge ("IJ"), who determined he is a danger to the community and flight risk and therefore denied bond. See Third Action, Dkt. 10-1. The Third Action challenged that determination as well as his initial and ongoing detention on due process grounds, seeking immediate release. See Third Action, Dkt. 1, at 9 (CM/ECF pagination). On October 29, 2026, the Honorable Stephen V. Wilson, United States District Judge, issued an Order Accepting Report and Recommendation of United States Magistrate Judge, dismissed all claims other than a claim challenging the bond hearing with prejudice, with the challenge to the bond hearing dismissed without prejudice as unexhausted. See Third Action, Dkt. 15 (Report and Recommendation); 18 (Order Accepting Report and Recommendation); 19 (Judgment).

As noted, the Court received the instant Petition on November 12, 2026. The Petition reflects that it was signed on November 5, 2026—seven days after the dismissal of the Third Action. The instant Petition purports to raise three claims challenging Petitioner's re-detention, based on alleged violation of: (1)

procedural due process; (2) substantive due process; and (3) the "Procedure Act" in connection with the revocation of his "parole." Pet. at 6-7 (CM/ECF pagination). Petitioner seeks immediate release and an order barring his re-detention without at least seven days' notice and a pre-deprivation hearing before an immigration judge. Id. at 7.

The Court finds the Petition may properly be decided without further briefing or argument and, for the reasons set forth below, denies the Petition with prejudice, again, as to Petitioner's challenge to his initial detention, and without prejudice as to his challenge to his bond hearing and to any future Zavdyvas claim should he be subject to prolonged detention after the existence of a final order of removal.

## II.

## BACKGROUND

The Court sets forth the following facts and findings from the Report and Recommendation that was accepted by Judge Wilson in the Third Action.

> Petitioner is a native and citizen of Mexico. He entered the United States in 2003, apparently without inspection. Pet. at 3. Petitioner concedes he has a criminal history. See id. at 2, 5. He was arrested in April 2025 for domestic violence and after being released, he was detained by Immigration and Customs Enforcement ("ICE"). Id. at 5. A Notice to Appeal was issued, placing Petitioner in immigration proceedings pursuant to 212(a)(6)(A)(i) of the Immigration and Nationality Act. Id. at 31. On or about May 30, 2025, Petitioner was released on bond on the condition that he has "[n]o further encounters with law enforcement." Id. at 2; Dkt. 10-3. Shortly thereafter, on June 23, 2025, Petitioner was arrested for driving without a valid license. Pet. at 2; Reply at 3 (CM/ECF pagination). The Department of

Homeland Security issued an Immigration Detainer on June 23, 2025. Reply, Exh. 8. ICE agents re-detained him on June 26, 2025 for violating the terms of his release and his bond was cancelled. Pet. at 3, 27; Ans. at 2. Petitioner was ordered removed by an IJ on October 15, 2025, and he has filed an appeal with the Board of Immigration Appeals ("BIA"). Pet. at 4; Ans. at 2; Dkt. 10-2, 10-4.

Petitioner constructively filed the First Action on November 30, 2025, wherein he purported to challenge his detention beyond the 90-day removal period. First Action, Dkt. 1, 8. The First Action was denied and dismissed without prejudice on April 14, 2026. Id., Dkt. 13-14. Nine days later, on April 23, 2026, Petitioner constructively filed the Second Action, challenging the lawfulness of his arrest and prolonged detention without a meaningful opportunity to demonstrate detention is not warranted. Second Action, Dkt. 1. Respondents acknowledged that Petitioner appeared to be a member of the Bond Eligible Class certified in Bautista v. Santacruz, Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) ("Bautista"). Id., Dkt. 10. Due to Respondents' agreement that Petitioner was a Bautista class member, on May 5, 2026, the Honorable Stephen V. Wilson, United States District Judge, granted Petitioner's Ex Parte Motion for Emergency Temporary Restraining Order and ordered Respondents to provide Petitioner an individualized bond redetermination hearing before an IJ. Id., Dkt. 13. The Second Action was dismissed without prejudice on June 15, 2026. Id., Dkt. 17-18.

Petitioner received a bond hearing on May 15, 2026, at which the government bore the burden of demonstrating Petitioner was a flight risk or danger. The IJ denied bond in a reasoned

decision, finding that Petitioner was a danger to the community and flight risk. Dkt. 10-1. Petitioner reserved the right to appeal the IJ's decision (id.), but he has not filed an appeal. Ans. at 4.

In the instant Petition, Petitioner raises three claims: (1) a procedural due process claim based on his re-detention and continued detention; (2) a substantive due process claim based on his continued detention; and (3) a procedural due process claim based on the Respondents' failure "to provide a neutral decision-maker to review the continued custody of Petitioner."

[SECTION HEADING]

A petitioner seeking habeas relief must demonstrate that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The protections of habeas corpus extend to those in immigration detention. See Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin, 955 F.3d at 759.

"It is the petitioner's burden to prove his custody is in violation of the Constitution, laws[,] or treaties of the United States." Snook v. Wood, 89 F.3d 605, 609 (9th Cir. 1996) (citation omitted). Here, Petitioner has failed to carry his burden to prove his current custody violates his federal rights.

## A. Initial Re-Detention and Continued Detention

As noted, Petitioner previously challenged his re-detention and was granted a bond hearing. He now claims he is entitled to

immediate release.

First, to the extent Petitioner seeks relief under Zadvydas v. Davis, 533 U.S. 678 (2001), Zadvydas is inapplicable here as he is not subject to a final order of removal. Zadvydas applies to noncitizens who are detained under 8 U.S.C. § 1231(a)(6) subject to a final order of removal, limiting a noncitizen's "post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." See Zadvydas, 533 U.S. at 682, 688-89. A removal order "become[s] final upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the [noncitizen] is permitted to seek review of such order by the [BIA]." Cui v. Garland, 13 F.4th 991, 996 (9th Cir. 2021). Currently, while Petitioner has been ordered removed, he filed an appeal to the BIA, which remains pending. Thus, he is not yet subject to a final order of removal. Id. Petitioner is not entitled to relief under Zadvydas.

Additionally, as the Supreme Court has explained, "[a] writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." United States ex. rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923) (citation omitted). "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation

occurred." INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984). "The mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." Rodrigues De Oliveira v. Joyce, 2025 WL 1826118, at *5 (D. Me. July 2, 2025) (citation omitted); H.N. v. Warden, Stewart Detention Ctr., 2021 WL 4203232, at *5 (M.D. Ga. Sept. 15, 2021) (explaining that even if petitioner's initial detention was unlawful, he was not entitled to habeas relief). Thus, "to the extent that Petitioner seeks [his] release from custody based on [an] allegedly unlawful arrest, there is no basis for the Court to grant such relief." See Marroquin Salazar v. Noem, Case No. 5:25-cv-02367-FLA-JC (C.D. Cal.), Dkt. 10 at 20-21 (collecting cases), accepted by 2025 WL 3535050, at *1 (C.D. Cal. Dec. 8, 2025) (rejecting petitioner's objection that the report misapplied the Fourth Amendment by making the unsupported assumption that release is never an available habeas remedy in that context, explaining the report's findings are supported by Supreme Court and Ninth Circuit precedent). "The dispositive question in this habeas proceeding is not whether Petitioner's arrest was procedurally defective, but whether he is presently entitled to release from custody." Liu v. Janecha, 2026 WL 2178768, at *2 (C.D. Cal. July 27, 2026). Petitioner was re-detained based on a violation of his bond conditions and has been provided a bond hearing, at which the IJ found he was a danger to the community and a flight risk. He is subject to an order of removal, which he has appealed. The present detention is therefore based on his ongoing removal proceedings and the IJ's custody determination, rather than solely on the circumstances of his initial arrest.

Further, Petitioner has not shown a due process violation warranting immediate release. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. Zadvydas, 533 U.S. at 693-94. Due process requires that an individual be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." See Mathews v. Eldridge, 424 U.S. 319, 333, 348 (1976) (citation omitted). The Court must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

Here, it is unclear what liberty interest was at stake at the time of Petitioner's re-detention. Petitioner had been released by ICE only a month earlier on the condition that he has "[n]o further encounters with law enforcement." He then violated the conditions of his release and bond was cancelled based on his arrest for driving without a valid license. Nonetheless, at a minimum, he has a private interest in freedom from prolonged detention. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207-08 (9th Cir. 2022). The Ninth Circuit has cautioned, however, that the Court "cannot simply count [the] months of detention and leave it at that," and instead also must consider the process Petitioner

received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order. Id. at 1208.

Even assuming a liberty interest exists, the government's interest in enforcing the immigration laws is significant, and Petitioner has failed to show that the existing agency procedures are inadequate to safeguard that liberty interest and mitigate the risk of erroneous deprivation. Rodriguez Diaz, 53 F.4th at 1208-09. Petitioner received a bond hearing at which the government bore the burden of proving he was a danger and flight risk and he had the opportunity to appeal the outcome of that bond decision to the BIA. Further, as in Rodriguez Diaz, Petitioner's detention has become prolonged because he has challenged the IJ's removal order. The government has a "strong interest" in enforcing the immigration laws, which "is especially true when it comes to determining whether removable [noncitizens] must be released on bond during the pendency of removal proceedings." Id. at 1208. Such interests "only increase with the passage of time," as "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing [a noncitizen's] ultimate removal" and the risk of a detainee absconding "inevitably escalates as the time for removal becomes more imminent." Id. Here, as noted, the IJ found Petitioner was both a danger to the community and flight risk; thus, his continued detention serves the government's interest in protecting the public from dangerous criminal noncitizens and ensuring Petitioner's appearance at future proceedings. Id. at 1208. Accordingly, the undersigned finds Petitioner has not shown that

his present detention is unlawful or that release is the appropriate remedy.

**B. Challenge to Bond Decision**

Petitioner also appears to challenge the IJ's bond decision. However, Petitioner has not exhausted his administrative remedies.

"Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam); see also Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). The exhaustion requirement is not jurisdictional, but prudential exhaustion may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (as amended).

Exhaustion may be waived when administrative remedies are inadequate or inefficacious, pursuit of such remedies would be futile, irreparable injury would result, or those proceedings would be void. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004);

Ward, 678 F.3d at 1045. "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of [the] Laing factors applies." Chavez v. Noem, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (citation omitted).

Detainees subject to Section 1226 who are dissatisfied with the IJ's bond determination may file an administrative appeal with the BIA. See Leonardo, 646 F.3d at 1160. "If they remain dissatisfied, they may file a petition for habeas corpus in the district court." Id. Petitioners should "exhaust[] administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." Id.; see also Rojas-Garcia v. Ashcroft, 339 F.3d 814, 819 (9th Cir. 2003) ("[T]he petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal[.]").

Prudential exhaustion applies here. Petitioner reserved appeal, but he did not file an appeal. Ans. at 4. Petitioner could have waited to file this petition until after appealing to the BIA. See Leonardo, 646 F.3d at 1160; Rojas-Garcia, 339 F.3d at 819. Each of the prudential exhaustion factors weigh in favor of requiring exhaustion. First, Petitioner challenges the IJ's findings, arguing that the IJ failed to meaningfully consider the Guerra factors. Reply at 7-10. Petitioner presents no evidence why the factual issues underpinning this assertion cannot be addressed and corrected in the context of an appeal. The factual record can and should be properly developed by the BIA, particularly given that Petitioner has not otherwise presented any evidence of the bond

hearing record. See Executive Office for Immigration Review, Part II - OCIJ Immigration Court Practice Manual, Chap. 8.3(e)(7) ("Usually, the [IJ's] decision is rendered orally. If either party appeals, the [IJ] prepares a written decision based on notes from the hearing, however the record will not be transcribed.") available at https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm. Second, waiving exhaustion in this instance would encourage others to deliberately bypass the established administrative scheme, which contemplates appeals with the BIA, not the district court, in the first instance. Third, the outcome of such appeal may provide Petitioner the relief sought in this proceeding and eliminate the need for judicial review.

Further, Petitioner has not shown exhaustion should be waived in his case. The undersigned finds Petitioner's cursory argument that "the administrative remedy is inadequate due to the agency bias" (Reply at 7) unpersuasive, as Petitioner has not demonstrated any specific policy or BIA ruling that would render appeal in his particular case futile.

Finally, to the extent Petitioner argues he will suffer irreparable injury by waiting for a BIA decision (Reply at 7), this is an issue shared by all noncitizens in custody seeking review of their bond decisions. "[I]f the ordinary delay of administrative review—and its corresponding extension of a petitioner's detention—constituted 'irreparable injury' sufficient to excuse exhaustion, then it would be excused in every bond denial." Liu, 2026 WL 2178768, at *4. Excusing exhaustion on this basis "would cause the exception to swallow the rule." Yu v. Noem, 2026 WL 1042213, at *3 (E.D. Cal. Apr. 17, 2026), adopted

> by 2026 WL 1188854 (E.D. Cal. Apr. 30, 2026). While the time needed to complete a BIA appeal may tip against enforcement of exhaustion in some cases with compelling facts, it is not enough on its own to warrant waiving the exhaustion requirement and is not warranted in this case.
>
> Accordingly, Petitioner's challenges to his bond decision should be dismissed without prejudice for failure to exhaust administrative remedies.

Third Action, Dkt. 15 at 2-10.

As noted, in the instant Petition, Petitioner again challenges his initial detention. The abuse of the writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." Eldridge v. Howard, 70 F.4th 543, 551 (9th Cir. 2023) (citation omitted). A successive petition raising identical grounds for relief must be dismissed unless the petitioner shows cause and prejudice or a fundamental miscarriage of justice. Id. Looking to the substance of the claim, the question is whether the petitioner "had a full and fair opportunity to raise the claim in the prior application." Id. at 552 (citation omitted). Petitioner has had such an opportunity. As quoted above, Petitioner alleged his rights were violated in his initial and ongoing detention and sought immediate release due to those alleged violations in the Third Action. His claims in the instant Petition, as they relate to his initial and ongoing detention, remain substantively the same as in his Third Action and have been found to lack merit by Judge Wilson, having been dismissed with prejudice. The Petition, signed seven days after that determination, does not allege any material change in fact or circumstance. Petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of justice. As such, the claims in the instant Petition relating to Petitioner's initial and ongoing detention are dismissed with

prejudice. Nothing herein, however, limits Petitioner's ability to rely on Zavdyvas in the future should he become subject to a final order of removal and his post-final order of removal detention becomes prolonged.

Petitioner does not expressly challenge the immigration judge's denial of bond in the instant Petition. However, to the extent such a challenge is implied by Petitioner's general challenge to his ongoing detention, the Court, to be clear, dismisses any such implied challenge to the bond decision without prejudice to Petitioner pursuing remedies he may have before the Bureau of Immigration Appeals, and other avenues of review available to challenge such determination, finding prudential exhaustion still applies to any such challenge, with Petitioner failing to meet his burden to show the exhaustion requirement should be waived here for the same reasons set forth above.

## IV.

## CONCLUSION

IT IS THEREFORE ORDERED that: (1) the IFP Request (Dkt. 3) is DENIED as moot; and (2) Judgment shall be entered denying the Petition with prejudice as to all claims for relief except for an implied challenge to Petitioner's bond hearing and any future claim based on Zavdyvas should Petitioner become subject to a final order of removal and thereafter become subject to prolonged detention, which are dismissed without prejudice.

Dated: November 19, 2026__

JOHN D. EARLY
United States Magistrate Judge